United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREAS M. ZYLA, | No. C-13-2464 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| AMERICAN RED CROSS BLOOD SERVICES, | **(Docket No. 32)** |
| Defendant. _____/ | |

Plaintiff Andreas M. Zyla initiated this lawsuit against Defendant American Red Cross Blood Services ("ARC"), asserting various employment-related claims, including age discrimination and retaliation (in violation of federal and state law) and wage-and-hour claims under the California Labor Code. On June 12, 2013 – *i.e.*, several months after filing the lawsuit, Mr. Zyla filed a Chapter 13 voluntary petition for bankruptcy. Because Mr. Zyla failed to identify the instant case for the bankruptcy court and creditors, ARC has now filed a motion to dismiss on the grounds of judicial estoppel.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion. However, the dismissal is without prejudice.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Mr. Zyla filed the instant lawsuit in state court on April 29, 2013. *See* Docket No. 1 (complaint). On June 12, 2013 – *i.e.*, several months after filing the instant case – Mr. Zyla filed a Chapter 13 voluntary petition for bankruptcy. *See In re Zyla*, No. 13-43384 (N.D. Cal. Bankr. Ct.).

1  Mr. Zyla was represented by Michael H. Luu in the bankruptcy proceedings. *See* Luu Decl. ¶ 2.
2  Mr. Luu has not represented Mr. Zyla in the instant case.

3  There is no dispute that, prior to the filing of the motion to dismiss on February 13, 2014 – in
4  fact, prior to February 24, 2014 – Mr. Zyla never disclosed to the bankruptcy court the existence of
5  this lawsuit. For example, in the Summary of Schedules (Schedule B) and Statement of Financial
6  Affairs submitted by Mr. Luu to the bankruptcy court on July 11, 2013 (*i.e.*, a month after
7  bankruptcy proceedings had been initiated), no mention was made of the pending lawsuit. *See* RJN,
8  Ex. A (Summary of Schedules (Schedule B) and Statement of Financial Affairs).

9  There is also no dispute that, on August 23, 2013, the bankruptcy court confirmed Mr. Zyla's
10 Chapter 13 Plan – *i.e.*, without any knowledge of the pending lawsuit. *See* RJN, Ex. D
11 (confirmation order after meeting of creditors); *see also* RJN, Exs. B-C (Chapter 13 Plan and Zyla
12 declaration). Under the plan, the future earnings of Mr. Zyla are to be submitted to the supervision
13 and control of the trustee, and Mr. Zyla will pay to the trustee the sum of $350 each month for 12
14 months and then $611 per month for 48 months. The trustee will make then make disbursements to,
15 *e.g.*, secured and unsecured creditors. *See* RJN, Ex. B (Chapter 13 Plan).

16 Mr. Zyla, however, claims that he cannot be held to blame for the failure to disclose the
17 pending lawsuit because:

18 (1) he told his bankruptcy attorney Mr. Luu about the lawsuit on the first day he
19 consulted with Mr. Luu, *see* Zyla Decl. ¶ 1 (stating that "I had the lawsuit on my person
20 when I first consulted with Mr. Luu and we discussed the lawsuit for several minutes[;] I do
21 not specifically recall if I showed the lawsuit to Mr. Luu, or if he made a copy, but I do
22 specifically remember that we discussed the lawsuit because it had recently been filed"); and
23 (2) the above documents (*i.e.*, Summary of Schedules and Statement of Financial Affairs)
24 were "never disclosed to me for review or signature. Up until [ARC's] Motion to Dismiss
25 was filed, I had never seen such documents. Nor were these documents ever read aloud to
26 me." Zyla Decl. ¶ 3.

27 ARC takes issue with Mr. Zyla's claim that he never saw the Summary of Schedules
28 (Schedule B) and Statement of Financial Affairs until the filing of the motion to dismiss. ARC

**United States District Court**
For the Northern District of California

points out that, at the end of the Summary of Schedules, there is the following statement: "I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of 15 sheets, and that they are true and correct to the best of my knowledge, information and belief." RJN, Ex. A (declaration). Similarly, at the end of the Statement of Financial Affairs, there is the following statement: "I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct." RJN, Ex. A (declaration). However, for each declaration, there is no actual *handwritten signature* by Mr. Zyla; rather, there is only an *electronic signature – i.e.*, "/s/ Andreas M Zyla." The fact that the documents were electronically signed leaves open the possibility that Mr. Luu did not know about the existence of the documents or, even if he did know, that he needed to review and sign the documents. In other words, it is possible that Mr. Luu took action unilaterally – including causing the documents to be signed electronically – without Mr. Zyla's knowledge.

In his own declaration, Mr. Luu concedes that Mr. Zyla may have told him about the pending lawsuit at the time bankruptcy proceedings were initiated. Mr. Luu states:

> 9. BK Counsel was contacted via email and phone calls on February 14, 2014 by Client [*i.e.*, the day after the motion to dismiss was filed]. Client informed BK Counsel that there is a Motion to Dismiss the Lawsuit due to the fact that BK Counsel failed to disclose the Lawsuit in his bankruptcy petition and possibly the omission was intentional according to the Motion to Dismiss. The communications by Client allege that Client has informed BK Counsel at the initial consultation meeting about the lawsuit.
>
> 10. BK Counsel informed Client that prior to engagement of his service, *Client might have mentioned the Lawsuit or a possibility of a lawsuit at the free consultation meeting.* However, at the time BK Counsel prepared the missing schedule to file with the [Bankruptcy] Court on July 11, 2013, the Lawsuit was not discussed as an asset of Client. BK Counsel believes Client was sincere in his disclosure of a Lawsuit in the early stage of bankruptcy preparation. *BK Counsel submits that he might have failed to acknowledge the lawsuit at subsequent meeting due to the emergency nature of the foreclosure against his primary residence that dominate most of the bankruptcy petition.*

Luu Decl. ¶¶ 9-10 (emphasis added).

3

As indicated by the above, immediately after ARC filed the pending motion to dismiss, Mr. Zyla contacted Mr. Luu about the failure to disclose. *See* Zyla Decl. ¶ 7. Mr. Zyla asked Mr. Luu why the instant case "was not included in the Bankruptcy filings and what he was going to do to rectify the situation." Zyla Decl. ¶ 7. On February 24, 2014 (*i.e.*, 11 days after ARC filed the motion to dismiss), Mr. Luu filed on behalf of Mr. Zyla (1) an amended Schedule B and (2) an amended Statement of Financial Affairs.

(1) The amended Schedule B now reflects that Mr. Zyla filed against ARC a "Claim for violation Age Discrimination in Employment Act (ADEA) and Fair Housing and Employment Act (FEHA)" but does not mention, *e.g.*, the wage-and-hour claims. Luu Decl., Ex. 1 (Amended Schedule B). The value of the claim is stated to be "[u]nknown" – even though in a joint CMC statement dated January 21, 2014, Mr. Zyla gave specific figures regarding damages sought. *See* Docket No. 27 (Joint CMC St. at 8-9) (asserting lost wages of $158,437.50, interest of at least $15,437.50, overtime of $79,320, and so forth).

(2) The amended Statement of Financial Affairs essentially reflects the same information. *See* Luu Decl., Ex. 1 (Amended Statement of Financial Affairs).

## II.   DISCUSSION

A.   <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949.

"Generally, the scope of review on a motion to dismiss . . . is limited to the contents of the complaint."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  However, "[a] court may . . . consider certain materials – [including] matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  In *Carr v. Beverly Health Care & Rehabilitation Services*, No. C-12-2980 EMC, 2013 U.S. Dist. LEXIS 158479 (N.D. Cal. Nov. 15, 2013), this Court took judicial notice of "the papers filed in the bankruptcy proceeding [involving the plaintiff], in particular, [the plaintiff's] petition and the bankruptcy court's order of discharge."  *Id.* at *5.  Consistent with *Carr*, the Court takes judicial notice of the documents submitted by ARC as part of its request for judicial notice – *i.e.*, the papers filed by Mr. Zyla in support of his bankruptcy petition and the bankruptcy court's order confirming his Chapter 13 plan.  The Court also takes judicial notice of the amended bankruptcy disclosures that were filed by Mr. Luu on Mr. Zyla's behalf.

According to ARC, the Court should ignore the declarations submitted by Mr. Zyla and Mr. Luu because they are not within the four corners of the complaint, nor are they judicially noticeable.  However, for purposes of this order, the Court does not rely on the declarations in granting the motion to dismiss.

To the extent ARC also argues that Mr. Zyla's declaration should be ignored because it is self-serving, that is not a ground for striking the declaration.  For example, ARC has failed to show that the declaration is contradictory to a prior declaration that Mr. Zyla made or prior sworn testimony that he gave, and thus it cannot be stricken as a sham declaration.  *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (stating that "[t]he general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony"; this rule "prevents a party who has been examined at length on deposition from rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact")

1  (internal quotation marks omitted).  ARC asserts that the current declaration is contradictory to the
2  declarations before the bankruptcy court that Mr. Zyla read the Summary of Schedules and
3  Statement of Financial Affairs and certified that they contained accurate information.  But, as noted
4  above, it is possible that Mr. Luu acted unilaterally in signing the documents on Mr. Zyla's behalf
5  without Mr. Zyla ever knowing.

6  The Court thus turns to the merits of ARC's motion to dismiss – *i.e.*, that judicial estoppel
7  bars Mr. Zyla from bringing the instant lawsuit because he failed to disclose its existence to the
8  bankruptcy court.

### B.      Doctrine of Judicial Estoppel

This Court recently addressed the issue of judicial estoppel in the bankruptcy context in *Carr*.  In *Carr*, the Court explained the doctrine as follows:

> "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  The application of the doctrine "is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." *Id.* at 783.  The Ninth Circuit "invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Id.* at 782.  In short, the doctrine is designed in large part to preserve the integrity of the courts.
>
> Under Ninth Circuit law, three factors that a court "*may* consider" in determining whether to apply the doctrine of judicial estoppel are as follows: (1) whether the party's later position is "clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 782-83 (emphasis in original and internal quotation marks omitted; citing *New Hampshire v. Maine*, 532 U.S. 742 (2001)). These factors shall hereinafter be referred to as the *New Hampshire* factors.
>
> The Ninth Circuit has also held that, in the bankruptcy context specifically, "[j]udicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his

6

> schedules or disclosure statements to identify the cause of action as a contingent asset." *Id.* at 784; *see also Ah Quin v. County of Kauai DOT*, No. 10-16000, 2013 U.S. App. LEXIS 15076, at *7 (9th Cir. July 24, 2013)[1] (stating that, "[i]n the bankruptcy context, the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action"); *Hay v. First Interstate Bank*, N.A., 978 F.2d 555, 557 (9th Cir. 1992) ("recogniz[ing] that all facts were not known to Desert Mountain at that time, but enough was known to require notification of the existence of the asset to the bankruptcy court") (emphasis in original); *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (stating that "[t]he debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a known cause of action such that it must be disclosed") (internal quotation marks omitted).
>
> However, the Ninth Circuit has also recognized that judicial estoppel will not apply where there was an inadvertent or mistaken omission from a bankruptcy filing. *See Ah Quin*, 2013 U.S. App. LEXIS 15076, at *9-10.

*Id.* at *6-9.

In *Ah Quin*, the Ninth Circuit addressed the inadvertence/mistake exception to judicial estoppel in some detail. More specifically, the court took note that its sister circuit courts had taken a narrow interpretation for the inadvertence/mistake exception.

> The courts have not asked whether the debtor's omission of the pending claim from the bankruptcy court was inadvertent or mistaken; instead, they have asked only whether the debtor knew about the claim when he or she filed the bankruptcy schedules and whether the debtor had a motive to conceal the claim. This interpretation of "inadvertence" is narrow in part because the motive to conceal claims from the bankruptcy court is, as several courts have explained, nearly always been present.

*Ah Quin*, 733 F.3d at 271.

But, the Ninth Circuit held, a narrow interpretation of the inadvertence/mistake exception is not appropriate in certain circumstances – more particularly, when the plaintiff to be estopped

> reopen[s] her bankruptcy proceedings and file[s] amended bankruptcy schedules that properly list[] [the] claim [at issue] as an asset. When a plaintiff-debtor has *not* reopened bankruptcy proceedings, a narrow exception for good faith is consistent with *New Hampshire* and with

---

[1] *Ah Quin* has since been given a reporter cite – 733 F.3d 267 (9th Cir. 2013).

7

> the policies animating the doctrine of judicial estoppel. The three primary *New Hampshire* factors are still met (inconsistency, bankruptcy court accepted the contrary position, to the debtor's unfair advantage). And, as the courts repeatedly stress, the importance of full disclosure in bankruptcy proceedings "cannot be overemphasized." In sum, given the strong need for full disclosure in bankruptcy proceedings and the fact that the plaintiff-debtor received an unfair advantage in the bankruptcy court, it makes sense to apply a presumption of deliberate manipulation. But where, as here, the plaintiff-debtor reopens bankruptcy proceedings, corrects her initial error, and allows the bankruptcy court to re-process the bankruptcy with the full and correct information, a *presumption* of deceit no longer comports with *New Hampshire*.

*Id.* at 272-73.

For example,

> once a plaintiff-debtor has amended his or her bankruptcy schedules and the bankruptcy court has processed or reprocessed the bankruptcy with full information, two of the three primary *New Hampshire* factors are no longer met. Although the plaintiff-debtor initially took inconsistent positions, the bankruptcy court ultimately *did not accept* the initial position. . . .
>
> Moreover, the plaintiff-debtor *did not obtain an unfair advantage*. Indeed, the plaintiff-debtor obtained no advantage at all, because he or she did not obtain any benefit whatsoever in the bankruptcy proceedings. Cases such as *Oneida* [a Third Circuit opinion], which justify the application of judicial estoppel because *the creditors* were not told initially of the pending action are wrong for two reasons: The creditors *are told* eventually, and the doctrine of judicial estoppel is concerned with the integrity of the *courts*, not the effect on parties.

*Id.* at 274-75.

According to the Ninth Circuit,

> [i]n these circumstances, rather than applying a *presumption* of deceit, judicial estoppel requires an inquiry into whether the plaintiff's bankruptcy filing was, in fact, inadvertent or mistaken, as those terms are commonly understood. Courts must determine whether the omission occurred by accident or was made without intent to conceal. The relevant inquiry is not limited to the plaintiff's knowledge of the pending claim and the universal motive to conceal a potential asset – though those are certainly factors. The relevant inquiry is, more broadly, the plaintiff's subjective intent when filling out and signing the bankruptcy schedules.

///

///

///

*Id.* at 276-77.[2]

Unless the plaintiff-debtor amends his or her bankruptcy schedules and the bankruptcy court has processed or reprocessed the bankruptcy with the new information, the presumption of deceit obtains, and inadvertence or mistake is not considered.

C.     Judicial Estoppel in the Instant Case

In the instant case, there is no real dispute that the three *New Hampshire* factors have been satisfied. Moreover, as the Ninth Circuit has stated, the default rule is that, "[i]f a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." *Ah Quin*, 733 F.3d at 271. Here, Mr. Zyla clearly omitted his pending lawsuit from the bankruptcy schedules and obtained a plan confirmation. As a prima facie matters, judicial estoppel applies and bars Mr. Zyla's lawsuit. As noted in *Ah Quin*, once a bankruptcy court confirms the Chapter 13 plan based on an incomplete schedule, the *New Hampshire* factors are presumptively satisfied.[3]

Mr. Zyla, however, invokes the inadvertence/mistake exception to judicial estoppel. Mr. Zyla points out that, after ARC filed the motion to dismiss, he corrected his omission by filing amended disclosures with the bankruptcy court in which he disclosed the existence of this lawsuit.

---

[2] In *Ah Quin* itself, the Ninth Circuit determined that there were facts to support a conclusion of inadvertence/mistake on the part of the plaintiff-debtor as well as facts to support the opposite conclusion, *i.e.*, deceit on the part of the plaintiff-debtor. For example, the fact that "it was Plaintiff's counsel who first raised the bankruptcy to Defendant's attention at a settlement conference" suggested that the plaintiff-debtor was not acting in any bad faith. *Ah Quin*, 733 F.3d at 278. On the other hand, "the timing of the reopening of the bankruptcy case seems inculpatory: She did not move to reopen the bankruptcy case until after Defendant here raised the issue of judicial estoppel." *Id.* Ultimately, the Ninth Circuit stated that, "viewing the evidence in the light most favorable to Plaintiff, . . . her bankruptcy filing was inadvertent," and therefore summary judgment in the defendant's favor on the issue of judicial estoppel was not appropriate. *Id.*

[3] The doctrine of judicial estoppel applies to both Chapters 7 and 13 bankruptcy. Full disclosure is as important in Chapter 13 as it is in Chapter 7. *See Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010) (stating that a debtor's duty to disclose all assets or potential assets "applies to proceedings under Chapter 13 and Chapter 7 alike because 'any distinction between the types of bankruptcies available is not sufficient enough to affect the applicability of judicial estoppel because the need for complete and honest disclosure exists in all types of bankruptcies'"). For instance, in confirming a plan, the bankruptcy court must find that unsecured creditors are receiving at least as much as they would were it a Chapter 7 bankruptcy. *See Frazier v. Real Time Resolns., Inc.*, 469 B.R. 889, 902 (E.D. Cal. 2012) (stating that 11 U.S.C. § 1325(a)(4) , "known as the 'best interest of creditors test,' ensures that a Chapter 13 plan provides unsecured creditors with at least as much return as they would receive in a Chapter 7 liquidation").

1  According to Mr. Zyla, because he filed the amended disclosures, there is (under *Ah Quin*) no longer
2  a narrow interpretation of inadvertence/mistake – *i.e.*, there is no longer a presumption of deceit;
3  rather, there is now (at the very least) a factual dispute as to whether there was inadvertence or
4  mistake on his part in not having the instant action disclosed in the Summary of Schedules and
5  Statement of Financial Affairs.

6        For purposes of this opinion, the Court assumes that the amended disclosures filed by Mr.
7  Zyla constitute adequate disclosure. The problem for Mr. Zyla is that, even assuming such, the mere
8  filing of the amended disclosures is not enough to invoke the inadvertence/mistake exception under
9  *Ah Quin*. *Ah Quin* requires that the plaintiff-debtor reopen bankruptcy proceedings so that the
10 bankruptcy court can reprocess the bankruptcy with full and correct information. *See Ah Quin*, 733
11 F.3d at 272-73. Once the bankruptcy court has reprocessed the bankruptcy, *then* "two of the three
12 primary *New Hampshire* factors are no longer met" – *i.e.*, "[a]lthough the plaintiff-debtor initially
13 took inconsistent positions, the bankruptcy court ultimately *did not accept* the initial position" and
14 "the plaintiff-debtor *did not obtain an unfair advantage*." *Id.* at 274. Here, Mr. Zyla has taken a
15 step to correcting his omission by filing amended disclosures but there is nothing to suggest the
16 bankruptcy court has in fact reprocessed the bankruptcy with this new information. Absent such, the
17 three *New Hampshire* factors are all still satisfied, the presumption of deceit obtains, and there is no
18 basis under *Ah Quin* to open the door to a factual examination of inadvertence/mistake. *Cf. In re*
19 *Muitha*, No. 10-12255, 2013 Bankr. LEXIS 3122, at *1-2 (N.D. Cal. Aug. 2, 2013) (stating that, if
20 Chapter 13 debtor succeeds in obtaining confirmation of his amended plan, he will have a strong
21 argument that judicial estoppel does not apply).

22       Accordingly, the Court grants ARC's motion to dismiss on the grounds of judicial estoppel.
23 The dismissal, however, shall be without prejudice. Should Mr. Zyla succeed in getting the
24 bankruptcy court to reprocess his bankruptcy with the new information regarding this lawsuit, then
25 he is not precluded from returning to this Court and asking for relief. The Court notes, however, that
26 it is not, at this time, making any decision as to whether judicial estoppel should still apply given
27 that: Mr. Zyla may arguably be bound by the actions of Mr. Luu (his bankruptcy counsel), even
28 assuming that Mr. Luu signed the original Summary of Schedules and Statement of Financial Affairs

without Mr. Zyla's knowledge, and ARC argues that Mr. Zyla has already obtained an unfair advantage which cannot now be undone with the amended disclosures.

If Mr. Zyla takes no steps to seek relief from this order within 90 days of the date of this order, the dismissal will be deemed with prejudice and the case closed.

This order disposes of Docket No. 32.

IT IS SO ORDERED.

Dated:  March 27, 2014

_____
EDWARD M. CHEN
United States District Judge