1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREAS M. ZYLA,

        Plaintiff,

    v.

AMERICAN RED CROSS BLOOD
SERVICES,

        Defendant.

_____/

No. C-13-2464 EMC

**ORDER GRANTING PLAINTIFF'S
MOTION FOR RELIEF FROM
DISMISSAL**

**(Docket No. 40)**

      Plaintiff Andreas M. Zyla initiated this lawsuit against Defendant American Red Cross

Blood Services ("ARC"), asserting various employment-related claims, including age discrimination

and retaliation, in violation of both federal and state law, and wage-and-hour claims under the

California Labor Code.  On June 12, 2013, several months after filing the lawsuit, Zyla filed a

Chapter 13 voluntary petition for bankruptcy.  On March 27, 2014, this Court granted ARC's motion

to dismiss without prejudice as to all claims on the grounds of judicial estoppel because Zyla failed

to identify the instant case to the bankruptcy court.  *See* Order Granting Defs. Motion to Dismiss

("Order"), Docket No. 38.  The Court granted the dismissal without prejudice allowing Zyla the

opportunity to move for relief from dismissal should he succeed in having the bankruptcy court

reprocess his bankruptcy with the new information regarding this lawsuit.  Pending before the Court

is Zyla's motion for relief from dismissal.  *See* Docket No. 40.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion for relief from dismissal.  However, ARC is not precluded from asserting the affirmative defense of judicial estoppel following further factual development as to whether Zyla inadvertently or mistakenly omitted the lawsuit from the original bankruptcy filings.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Zyla initiated this lawsuit in Alameda County Superior Court on April 29, 2013 and it was removed to federal court on May 31, 2013.  *See* Docket No. 1 (Complaint).  On June 12, 2013, Zyla filed a Chapter 13 voluntary petition for bankruptcy.  *See In re Zyla*, No. 13-43384 (N.D. Cal. Bankr. Ct.).  Attorney Michael H. Luu represented Zyla in the bankruptcy proceedings.  Luu does not represent Zyla in the instant case.

There is no dispute that, prior to the filing of the motion to dismiss on February 13, 2014 – in fact, prior to February 24, 2014 – Zyla never disclosed to the bankruptcy court the existence of this lawsuit.  For example, in the Summary of Schedules (Schedule B) and Statement of Financial Affairs submitted by Luu to the bankruptcy court on July 11, 2013, a month after bankruptcy proceedings had been initiated, no mention was made of this pending lawsuit.  *See* Defendant's Request for Judicial Notice ("DRJN"), Ex. A (Schedule B and Statement of Financial Affairs) Docket No. 43-1.

There is also no dispute that, on August 23, 2013, the bankruptcy court confirmed Zyla's Chapter 13 Plan without any knowledge of the pending lawsuit.  *See* DRJN, Ex. C (confirmation order after meeting of creditors); *see also* DRJN, Ex. B (Chapter 13 Plan).  Under the plan, the future earnings of Zyla are to be submitted to the supervision and control of the trustee, and Zyla will pay to the trustee the sum of $350 each month for 12 months and then $611 per month for 48 months.  The trustee will then make disbursements to secured and unsecured creditors.  *See* DRJN, Ex. B (Chapter 13 Plan).

On February 24, 2014, 11 days after ARC filed the motion to dismiss, Luu filed with the bankruptcy court on behalf of Zyla (1) an amended Schedule B and (2) an amended Statement of Financial Affairs.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

(1)     The amended Schedule B now reflects that Zyla filed against ARC a "Claim for violation Age Discrimination in Employment Act (ADEA) and Fair Housing and Employment Act (FEHA)" but does not mention all claims, *e.g.*, the wage-and-hour claims. DRJN, Ex. I (Amended Schedule B).  The value of the claim is stated to be unknown – even though in a joint CMC statement dated January 21, 2014, Zyla gave specific figures regarding damages sought.  *See* Docket No. 27 (Joint CMC St. at 8-9) (asserting lost wages of $158,437.50, interest of at least $15,437.50, overtime of $79,320, and so forth).

(2)     The amended Statement of Financial Affairs essentially reflects the same information.  *See*  DRJN, Ex. I (Amended Statement of Financial Affairs).

On March 27, 2014, the Court granted ARC's motion to dismiss on the grounds of judicial estoppel without prejudice.  The Court stated that should Zyla succeed in getting the bankruptcy court to reprocess his bankruptcy with the new information regarding the lawsuit, he is not precluded from returning to this Court and asking for relief from dismissal.  *See* Order at 10-11, Docket No. 38.

Pending before the Court is Zyla's motion for relief from dismissal.  *See* Docket No. 40 ("Motion").  Zyla alerts the Court that, on April 16, 2014, Zyla and the trustee of the bankruptcy entered into a stipulation titled Amended Stipulation of Debtor and Chapter 13 Trustee to Settle Litigation ("Amended Stipulation").  *See* Plaintiff's Request for Judicial Notice ("PRJN"), Ex. 1, Docket No. 40-4.  The Amended Stipulation states

> The trustee hereby does stipulate and agree that any and all proceeds from any future settlement or future civil judgment minus reimbursement of case costs and attorney's fees to be paid to Attorney Salinas, are to be paid directly to the Debtors' [sic] [C]hapter 13 plan in addition to their [sic] regular plan payments.  If and when the claim is settled or a judgment is entered on the American Red Cross claim, Debtor will file with the Bankruptcy Court, within 30 days, an Amended Chapter 13 plan and Amended Schedule B and C and notice it for hearing.

PRJN at Ex. 1 (Amended Stipulation).  Additionally, the bankruptcy court issued an order approving the Amended Stipulation ("Bankruptcy Order").  *See* PRJN Ex. 2, Docket no. 40-4.  The Bankruptcy Order states

United States District Court

For the Northern District of California

1
2

An Amended Stipulation to [sic] Debtor and Chapter 13 Trustee to Settle Litigation was filed on April 16, 2014 as docket # 39 by Debtor, Andreas M[.] Zyla, through his attorney for record, Michael H. Luu.

3
4

The Court having read the various pleadings, documents[,] and proceedings herein, and having found cause based upon the parties' agreement, does hereby make its order as follows:

5
6

IT IS HEREBY ORDERED that the Amended Stipulation to Debtor and Chapter 13 Trustee to Settle Litigation is hereby approved.

7   PRJN Ex. 2 (Bankruptcy Order).

8       Zyla also submits a declaration asserting that the omission of the pending lawsuit from his

9   bankruptcy filings was inadvertent.  Specifically, Zyla claims that he told his bankruptcy attorney

10  Luu about the lawsuit on the first day he consulted with Luu, *See* Declaration of Andreas Zyla in

11  support of Motion for Relief from Dismissal ("Zyla Decl.") ¶ 1 (Docket No. 40-2) (stating that "I

12  had the lawsuit on my person when I first consulted with Mr. Luu and we discussed the lawsuit for

13  several minutes[;] I do not specifically recall if I showed the lawsuit to  Luu, or if he made a copy,

14  but I do specifically remember that we discussed the lawsuit because it had recently been filed").

15  Zyla also claims that the Summary of Schedules and Statement of Financial Affairs were "never

16  disclosed to me for review or signature.  Up until [ARC's] Motion to Dismiss was filed, I had never

17  seen such documents.  Nor were these documents ever read aloud to me."  Zyla Decl. ¶ 3.

18  Additionally, Zyla alleges the following,

19
20

5.  Up until February 13, 2014 [date when ARC filed the Motion to Dismiss], I honestly believed that whatever information was required to be disclosed about this lawsuit had been disclosed. . .

21
22

6.  At all times I had no reason to believe that there were any problems with disclosure in my Bankruptcy action, and I certainly was not trying to conceal the fact of my Bankruptcy action.

23
24
25

7.  As soon as I was alerted to the Motion to Dismiss, on February 13, 2014, by attorney Salinas [attorney for lawsuit before this Court] . . . I immediately contacted my bankruptcy attorney Michael Luu and asked him why this lawsuit was not included in the Bankruptcy filings and what he was going to do to rectify the situation.

26  Zyla Decl. ¶¶ 5-7.

27      ARC argues that the declarations submitted in support of Zyla's Motion are not be

28  admissible because they are "self-serving, rife with contradictions and inadmissible hearsay and

United States District Court

For the Northern District of California

opinion testimony."  Opposition to Motion for Relief ("Opp.") at 7, Docket No. 42; *see also* ARC's

evidentiary objections to Zyla and Kong declarations, Docket Nos. 44, 45.  Furthermore, ARC

argues that Zyla's motion should be denied because, *inter alia*,  Zyla failed to actually amend his

Chapter 13 Plan and the Amended Stipulation and Bankruptcy Order do not constitute reprocessing,

as required by this Court's order granting dismissal under judicial estoppel.

## II.    DISCUSSION

A.    Legal Standard

     1.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the

failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to

dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks*

*Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court

must take all allegations of material fact as true and construe them in the light most favorable to the

nonmoving party, although "conclusory allegations of law and unwarranted inferences are

insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

2009).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough

facts to state a claim to relief that is plausible on its face.'"  *Id.*  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than sheer possibility that a defendant acted

unlawfully."  *Iqbal*, 129 S. Ct. at 1949.

     "Generally, the scope of review on a motion to dismiss . . . is limited to the contents of the

complaint."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  However, "[a] court may . . .

consider certain materials – [including] matters of judicial notice – without converting the motion to

dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

2003).  In *Carr v. Beverly Health Care & Rehabilitation Services*, No. C-12-2980 EMC, 2013 WL

5946364 *2 (N.D. Cal. Nov. 15, 2013), this Court took judicial notice of "the papers filed in the

bankruptcy proceeding [involving the plaintiff], in particular, [the plaintiff's] petition and the bankruptcy court's order of discharge." *Id.* at *5. Consistent with *Carr*, the Court takes judicial notice of the documents submitted by ARC and by Zyla as part of their requests for judicial notice, including all documents filed with the bankruptcy court. *See* PRJN Exs. 1 & 2; DRJN Exs. A-I. As discussed below, in the context of this motion, certain evidentiary material may properly be considered.

       2.    <u>Chapter 13 Bankruptcy</u>

"Chapter 13 of the Bankruptcy Code provides a reorganization remedy for consumer debtors and proprietors with relatively small debts." *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991). "Chapter 13 was designed and enacted as a vehicle for voluntary repayment with future income through composition and/or extension of debts." *In Re Warren,* 89 B.R. 87, 91 (B.A.P. 9th Cir. 1988). Chapter 13 requires a debtor to submit a repayment plan for bankruptcy court approval. *See* 11 U.S.C. § 1321. The Supreme Court held

> A bankruptcy court is authorized to confirm a plan only if the court finds, *inter alia,* that "the plan has been proposed in good faith," § 1325(a)(3); that the plan assures unsecured creditors a recovery as adequate as "if the estate of the debtor were liquidated under chapter 7," § 1325(a)(4); that secured creditors either have "accepted the plan," obtained the property securing their claims, or "retain[ed] the[ir] lien[s]" where "the value ... of property to be distributed under the plan ... is not less than the allowed amount of such claim[s]," § 1325(a)(5); and that "the debtor will be able to make all payments under the plan and to comply with the plan," § 1325(a)(6).

*Johnson*, 501 U.S. at 87-88. Once a plan is confirmed, it has "res judicata [effect] as to all justifiable issues which were or could have been decided at the confirmation hearing." *In re Evans*, 30 B.R. 530, 531 (B.A.P. 9th Cir. 1983). After a plan is confirmed, the statute provides that a plan may be modified prior to the completion of payments for the following reasons:

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments;
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or

United States District Court

For the Northern District of California

(4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor . . .

11 U.S.C. § 1329; *Carroll v. Logan*, 735 F.3d 147, 151 (4th Cir. 2013) ("The repayment plan remains subject to modification for reasons including a debtor's decreased ability to pay according to plan, as well as the debtor's increased ability to pay.").

### 3.  Doctrine of Judicial Estoppel

In this Court's previous order granting the motion to dismiss, it detailed the law of judicial estoppel in the context of bankruptcy proceedings. *See* Order, Docket No. 38.  By way of summary, the Court held the following:  "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  A court "*may* consider" three factors in determining whether to apply the doctrine:  (1) whether the party's later position is "clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 782-83 (emphasis in original and internal citations omitted; citing *New Hampshire v. Maine*, 532 U.S. 742 (2001)) (hereinafter "*New Hampshire* factors").

In the bankruptcy context, "the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." *Ah Quin v. Cnty. of Kauai Dep't of Transp.,* 733 F.3d 267, 271 (9th Cir. 2013).  However, the Ninth Circuit also recognized that judicial estoppel will not apply where there was an inadvertent or mistaken omission from a bankruptcy filing.  *See Carr*, No. C-12-2980 EMC, 2013 WL 5946364 *3 (citing *Ah Quin*, 733 F.3d 271).

"When a plaintiff-debtor has *not* reopened bankruptcy proceedings, a narrow exception for good faith is consistent with *New Hampshire* and with the policies animating the doctrine of judicial

**United States District Court**
For the Northern District of California

1   estoppel." *Ah Quin*, 733 F.3d at 272 (citing *New Hampshire v. Maine*, 532 U.S. 742 (2001)). The

2   narrow exception only asks "whether the debtor knew about the claim when he or she filed the

3   bankruptcy schedules and whether the debtor had a motive to conceal the claim." *Id.* at 271.

4           However, where "the plaintiff-debtor reopens bankruptcy proceedings, corrects her initial

5   error, and allows the bankruptcy court to re-process the bankruptcy with the full and correct

6   information, a *presumption* of deceit [the narrow exception] no longer comports with *New*

7   *Hampshire*." *Id.* 272-73 (citing *New Hampshire*, 532 U.S. 742). When a plaintiff-debtor takes these

8   actions, two of the three *New Hampshire* factors are no longer met and the common meaning (rather

9   than the narrow meaning described above) of "inadvertence or mistake" is applied. In applying the

10  common meaning, the Ninth Circuit directs district courts to

11          determine whether the omission occurred by accident or was made
            without intent to conceal. The relevant inquiry is not limited to the
12          plaintiff's knowledge of the pending claim and the universal motive to
            conceal a potential asset – though those are certainly factors. The
13          relevant inquiry is, more broadly, the *plaintiff's subjective intent* when
            filling out and signing the bankruptcy schedules.

14

15  *Id.* at 276-77 (emphasis added).

16  B.      Zyla's Bankruptcy Was Effectively Reprocessed

17          Since this Court's March 27, 2014 Order, Zyla has effectively reprocessed his bankruptcy.

18  On April 16, 2014, Zyla entered into an Amended Stipulation with the trustee of his bankruptcy

19  agreeing "that any and all proceeds from any future settlement or future civil judgment minus

20  reimbursement of case costs and attorney's fees to be paid to Attorney Salinas, are to be paid

21  directly to the Debtors' [sic] [C]hapter 13 plan in addition to their [sic] regular plan payments."

22  PRJN Ex. 1. The Amended Stipulation also states that "[i]f and when the claim is settled or a

23  judgment is entered on the American Red Cross claim, Debtor will file with the bankruptcy court,

24  within 30 days, an Amended Chapter 13 Plan and Amended Schedule B and C and notice it for

25  hearing." *Id.* The trustee agreed with the stipulation; presumably the trustee reviewed it to make

26  sure it was in the best interest of the creditors. Furthermore, "having read the various pleadings,

27  documents and proceeding herein, and having found cause based upon the parties' agreement" the

28  bankruptcy court issued an order approving the Amended Stipulation. PRJN Ex. 2. This Court finds

United States District Court

For the Northern District of California

1    the Amended Stipulation and Bankruptcy Order, in conjunction with Zyla's prior filing of the

2    Amended Schedule B and Statement of Financial Affairs, (*see* DRJN Ex. I), are sufficient to

3    constitute reprocessing of his Chapter 13 bankruptcy for purposes of the doctrine of judicial

4    estoppel.  *See Ah Quin*, 733 F.3d at 272 (9th Cir. 2013) (in deciding plaintiff's bankruptcy had been

5    reprocessed, "[a] key factor is that Plaintiff reopened her bankruptcy proceedings and filed amended

6    bankruptcy schedules that properly listed this claim as an asset.").

7           ARC's arguments to the contrary are unpersuasive.  First, ARC exalts form over substance in

8    arguing that Zyla's actions do not constitute reprocessing because Zyla failed to formally move to

9    modify his Chapter 13 repayment plan pursuant to 11 U.S.C. §§ 1324, 1329.  A Chapter 13 plan

10   modification occurs when, *inter alia*, additional proceeds become available to increase or decrease

11   the debtor's payments to the trustee.  *See* 11 U.S.C. § 1329(a)(1).  Because this lawsuit is in its

12   infancy, any value is merely speculative at this juncture and would not likely provide a basis to

13   modify Zyla's payments.  *See e.g. In re Thornhill*, 268 B.R. 570, 574 (Bankr. E.D. Cal. 2001) (In a

14   motion to confirm a Chapter 13 plan where debtor offered to turn over damages received in a

15   pending lawsuit, the bankruptcy court held "[u]nless and until the adversary proceeding is settled or

16   reduced to a judgment in favor of the Debtors, the likelihood of actually recovering anything from

17   the adversary proceeding is simply too speculative to be considered by the court for the purpose of a

18   feasibility analysis.").  Had Zyla amended his repayment plan and noticed it for hearing for court

19   confirmation pursuant to §§ 1325 and 1329, no change would be made currently to the payment

20   schedule under the plan and the result would likely have been identical to the bankruptcy court's

21   approval of the Amended Stipulation – *i.e.*, any and all proceeds derived from the lawsuit will be

22   paid directly to the bankruptcy estate and an amended Chapter 13 plan will be submitted for

23   confirmation within 30 days.

24          Second, ARC's argument that finding reprocessing in the absence of a motion to modify and

25   refusing to dismiss the instant case based on judicial estoppel would disadvantage creditors is

26   disingenuous.  The creditors stand to lose *more* should the Court finds that Zyla is estopped from

27   asserting this lawsuit and thus, "[p]erversely, the only 'winner' in this scenario is the alleged bad

28   actor in the estopped lawsuit."  *See e.g. Ah Quin*, 733 F.3d at 276 ("If Plaintiff's bankruptcy

United States District Court

For the Northern District of California

1   omission was mistaken, the application of judicial estoppel in this case would do nothing to protect

2   the integrity of the courts, would enure to the benefit only of an alleged bad actor, and would

3   eliminate any prospect that Plaintiff's unsecured creditors might have of recovering.").

4        Third, ARC argues that because Zyla's Chapter 13 Plan is binding and has res judicata effect,

5   the Amended Stipulation and Bankruptcy Order are effectively meaningless.  Yet, ARC itself

6   acknowledges that a repayment plan's preclusive effect can be overcome by a subsequent court

7   order; ARC states "[u]nless it is subsequently modified by a bankruptcy court order, a confirmed

8   Chapter 13 Plan must be executed as originally approved."  Opp. at 3 (emphasis added).  While it is

9   true that Zyla's current repayment plan is binding and has res judicata effect, (see In re Evans, 30

10  B.R. at 531), a subsequent bankruptcy order (such as the one approving the stipulation here) can also

11  be binding.  See In re Davis, 314 F.3d 567, 570 (11th Cir. 2002) ("A Chapter 13 plan of

12  confirmation has res judicata effect unless it is subsequently modified by a bankruptcy court

13  order."); In re Jafary, 333 B.R. 680, 684 (Bankr. S.D.N.Y. 2005) ("The Court's research has

14  revealed that contrary to the Trustee's arguments, a confirmed Chapter 13 plan has res judicata

15  effect and cannot be modified absent court permission in the form of an order.").

16       Accordingly, the Bankruptcy Order approving the Amended Stipulation is sufficient to

17  constitute reprocessing and thus no presumption of deceit lies.

18       1.    *New Hampshire* Factors

19       Because Zyla has effectively reprocessed his bankruptcy, at least two of the three *New*

20  *Hampshire* factors for judicial estoppel are no longer met, including  (1) Zyla's position in this

21  instant lawsuit is no longer inconsistent with what is reflected in his bankruptcy and (2) there is no

22  perception that the either the bankruptcy or this Court has been misled by Zyla.[1]  *Ah Quin*, 733 F.3d

23  at 274 (after successful reprocessing of the bankruptcy "two of the three primary New Hampshire

24  factors are no longer met.")

---

25
26       [1] At hearing, ARC argued that the second factor is not met because Zyla's Amended
    Stipulation contained inaccurate information.  Specifically, the Amended Stipulation incorrectly
    states that no mediation had occurred between parties and that the lawsuit is pending in State court
27  instead of federal.  *See* PRJN Ex. 1 ¶ 3.  While it is true that Zyla's amended filings contain errors,
    the Court finds such errors are not material.
28

United States District Court

For the Northern District of California

1    As for the third factor of whether Zyla has received an unfair advantage in not disclosing this

2 lawsuit, some courts have viewed that the automatic stay obtained in filing a bankruptcy petition

3 constitutes an unfair advantage.  The Ninth Circuit found that a plaintiff-debtor obtains an unfair

4 advantage where he or she "enjoys the benefit of both an automatic stay and a discharge of debt in

5 his Chapter 7 bankruptcy proceeding."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785

6 (9th Cir. 2001)*; Becker v. Wells Fargo Bank, Nat. Ass'n*, CIV. 2:12-1742 WBS, 2012 WL 5187792

7 (E.D. Cal. Oct. 18, 2012) ("Plaintiff would receive an unfair advantage by pursuing these claims

8 against the defendants after failing to disclose them in his bankruptcy proceedings. Plaintiff has

9 received the benefit of an automatic stay.").  However, in *Ah Quin* the Ninth Circuit found that

10 "[n]othing in *Hamilton* forecloses the possibility that a court could conclude that, whereas an

11 intentional omission (as in *Hamilton*) would result in an unfair advantage, an inadvertent or

12 mistaken omission might not be unfair."  *Ah Quin*, 733 F.3d at 275 n. 6; *See Cagle v. C & S*

13 *Wholesale Grocers Inc.,* 505 B.R. 534, 538 (E.D. Cal. 2014) (court held that the "benefit of the

14 automatic stay is a sufficient 'unfair advantage'" but then assessed whether inadvertence or mistake

15 exception applied).  Here, the Court finds that any unfair advantage to Zyla has been minimized

16 because the creditors stand to gain, rather than lose, in permitting this lawsuit to proceed.  *Ah Quin*,

17 733 F.3d at 275 ("When a plaintiff-debtor amends his or her bankruptcy schedules to include the

18 previously omitted lawsuit, the creditors may now stake a claim in that lawsuit. By not permitting

19 the civil action to go forward, the creditors lose out on a potential recovery.").  Moreover, even if the

20 information about the instant suit had been disclosed with the initial Chapter 13 filing, ARC has not

21 demonstrated the automatic stay would not have issued.

22    The Court also finds ARC's argument unpersuasive that Zyla received the advantage that his

23 Chapter 13 bankruptcy was not converted to a Chapter 7 bankruptcy.  Pursuant to 11 U.S.C. §

24 1325(a)(4), a Chapter 7 bankruptcy is required where an unsecured creditor stands to gain more

25 value through liquidation of the assets than in a Chapter 13 repayment plan, also known as the "best

26 interest test."  *In re Messer*, BAP AZ-13-1215, 2014 WL 643712 *3-4 (B.A.P. 9th Cir. Feb. 19,

27 2014).  "The decision to convert the case to Chapter 7 is within the bankruptcy court's discretion."

28

United States District Court

For the Northern District of California

*In re Consol. Pioneer Mortgage Entities*, 264 F.3d 803, 806 (9th Cir. 2001).  Here, upon disclosing this lawsuit to the bankruptcy court and entering into the Amended Stipulation, the bankruptcy court issued an order approving Zyla and the trustee's actions without implicating conversion to Chapter 7 bankruptcy.  Nor did the trustee, upon being presented with the amended disclosure, seek to convert this case to a Chapter 7.  ARC's argument is based on speculation, and the Court finds that Zyla gained no unfair advantage based on the best interest test pursuant to § 1325(a)(4).

Accordingly, the Court finds that Zyla's bankruptcy has been effectively reprocessed to reflect the information regarding this lawsuit.

C.    Inadvertent/Mistake Exception to Judicial Estoppel Applies

Given Zyla has reprocessed his bankruptcy, the Court must now consider,

> whether the omission occurred by accident or was made without intent to conceal. The relevant inquiry is not limited to the plaintiff's knowledge of the pending claim and the universal motive to conceal a potential asset – though those are certainly factors. The relevant inquiry is, more broadly, the plaintiff's subjective intent when filling out and signing the bankruptcy schedules.

*Ah Quin*, 733 F.3d at 276-77.  The inadvertence/mistake exception to judicial estoppel considers the subjective intent and knowledge of the plaintiff-debtor rather than his counsel.  *Id.* at 277-78 (court looked to plaintiff's affidavit and testimony); *Dzakula*, 746 F.3d at 401 ("Plaintiff presented no evidence, by affidavit or otherwise, explaining her initial failure to include the action on her bankruptcy schedules."); *Just Film, Inc. v. Merch. Servs., Inc.*, 873 F. Supp. 2d 1171, 1179 (N.D. Cal. 2012) (finding no bad faith where plaintiff-debtor disclosed pending lawsuit to bankruptcy attorney who failed to include it in the bankruptcy disclosures).

First, the Court takes note that judicial estoppel is an affirmative defense, *see Love v. Tyson Foods, Inc.*, 677 F.3d 258, 267 (5th Cir. 2012); *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011); *Banuelos v. Waste Connections, Inc.*, 1:12-CV-1012 AWI SAB, 2013 WL 5147507 *6 (E.D. Cal. Sept. 12, 2013); and, typically, a plaintiff need not plead around an affirmative defense in his or her complaint.  *See, e.g.*, *Belluomini v. Citigroup, Inc.*, CV 13-01743 CRB, 2013 WL 3855589 (N.D. Cal. July 24, 2013) *9  n.3 (N.D. Cal. July 24, 2013) (stating that "[f]ederal courts

United States District Court

For the Northern District of California

1  have repeatedly held that a plaintiff is not required to plead facts in his complaint in order to avoid

2  potential affirmative defenses").  Accordingly, Zyla was not required to make allegations in his

3  complaint as to why judicial estoppel is not applicable.

4         However, in viewing the facts in the light more favorable to Zyla, the Court finds sufficient

5  facts to suggest it is plausible that Zyla's omission was inadvertent or mistaken.  *Cf. Dzakula v.*

6  *McHugh,* 746 F.3d 399, 401 (9th Cir. 2014) (affirming dismissal based on judicial estoppel because

7  "unlike in *Ah Quin,* Plaintiff presented no evidence, by affidavit or otherwise, explaining her initial

8  failure to include the action on her bankruptcy schedules").  Here, in a judicially noticeable

9  document, Zyla alleges before the bankruptcy court that this lawsuit was not originally disclosed

10  "for lack of knowledge of the existence of the claim at the time of filing [of the bankruptcy]."  PRJN

11  Ex. 1 ¶ 2.  While there may be a factual dispute as to the validity of this statement, the Court cannot

12  dismiss this case based on such dispute.

13         Furthermore, although courts do not typically look outside the pleadings to decide a motion

14  to dismiss, the Court finds it necessary to consider Zyla's declaration in deciding whether the

15  inadvertent/mistake exception applies.[2]  The Court finds, in viewing the facts in a light more

16  favorable to Zyla, that it is plausible that Zyla lacked the subjective intent to omit the lawsuit from

17  his bankruptcy filings.  For example, Zyla's declaration states the following:

18         5. Up until February 13, 2014 [date when ARC filed the Motion to
           Dismiss], I honestly believed that whatever information was required
19         to be disclosed about this lawsuit had been disclosed. . .

20

21         [2] ARC objects to the Court's consideration of the declarations submitted in support of the
Motion (*see* Docket Nos. 40-2, 40-3) because they are "self-serving, rife with contradictions and
22  inadmissible hearsay and opinion testimony."  Opp. at 7; *see* ARC's Evidentiary Objections to
Decls. of Pamela Kong and Andreas Zyla, Docket Nos. 44 & 45.  First, in deciding this Motion, the
23  Court does not consider any declaration other than that of Andreas Zyla (Docket No. 40-2).  Next,
although a court is typically confined to the pleadings in deciding a motion to dismiss, the Ninth
24  Circuit has held that the absence of any evidence, "by affidavit or otherwise, explaining [plaintiff's]
initial failure to include the action on her bankruptcy schedules," supported the finding that the
25  inadvertent/mistake exception to judicial estoppel did not apply.  *Dzakula*, 746 F.3d at 401.  Thus,
evidence in this context may be considered for limited purposes.  Accordingly, the Court considers
26  Zyla's declaration in deciding this motion.  As for ARC's evidentiary objections to Zyla's
declaration (*see* Docket No. 44), the Court **SUSTAINS** the objections to inadmissible hearsay to the
27  extent Zyla seeks to rely on any communication by Mr. Luu, including Zyla Decl. ¶¶ 8:5-11, 9:15,
14:15-21.  The Court **DENIES** all other objections to Zyla's declaration.

28

6.  At all times I had no reason to believe that there were any problems with disclosure in my Bankruptcy action, and I certainly was not trying to conceal the fact of my Bankruptcy action.

7.  As soon as I was alerted to the Motion to Dismiss, on February 13, 2014, by attorney Salinas [attorney for lawsuit before this Court] . . . I immediately contacted my bankruptcy attorney Michael Luu and asked him why this lawsuit was not included in the Bankruptcy filings and what he was going to do to rectify the situation.

Zyla Decl. ¶¶ 5-8 (Docket No. 40-2).

Accordingly, the Court finds it is plausible that Zyla's omission of this pending lawsuit from his Chapter 13 bankruptcy was mistaken or inadvertent.  However, such finding does not preclude parties from further developing the factual record for further adjudication to determine whether the inadvertent/mistake exception to judicial estoppel applies.

## III.   CONCLUSION

The Court hereby **GRANTS** Zyla's motion for relief from dismissal, which in effect denies dismissal of this action under the doctrine of judicial estoppel.  In so holding, the Court finds that ARC is not precluded from asserting the affirmative defense of judicial estoppel going forward, specifically as to whether the Zyla's omission of this lawsuit in his bankruptcy filings was in fact inadvertent or mistaken.

A Further Case Management Conference is scheduled for August 28, 2014, at 10:30 a.m.  A Joint Further CMC Statement shall be filed by August 21, 2014.

This order disposes of Docket No. 40.


IT IS SO ORDERED.


Dated:  August 6, 2014

_____
EDWARD M. CHEN
United States District Judge

14